

**IN THE DISTRICT COURT OF TULSA COUNTY**
**STATE OF OKLAHOMA**

| | |
|---|---|
| REGINA EDWARDS, on behalf of herself and all others similarly situated, and, SANDRA EDWARDS, on behalf of herself and all others similarly situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| CiTYR GROUP AT VISTA SHADOW, LLC, a foreign limited liability company, and P VISTA SHADOW, LCC, a foreign limited liability company, | ) ) ) ) ) ) |
| Defendants. | ) ) |

DISTRICT COURT
**F I L E D**

JUL 2 3 2021

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

JURY TRIAL DEMANDED

CJ-2021-02123

DAMAN CANTRELL

## CLASS ACTION PETITION

Plaintiffs, Regina Edwards and Sandra Edwards (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, for their claims against CityR Group at Vista Shadow, LLC and P Vista Shadow, LLC, allege and state as follows:

### INTRODUCTION

1.      The greedy, unethical landlord of Vista Shadow Mountain Apartments must be held accountable for the flagrant and illegal mistreatment of its of tenants, some of whom are among Tulsa's most vulnerable citizens.

2.      These tenants number in the hundreds and include retired grandmothers, entrepreneurs, disabled veterans and young families with newborn babies.  These tenants represent a diverse cross-section of the community in terms of age, race, and income.

3.      Many if not most of the tenants who lived at Shadow Mountain had valid,

**EXHIBIT**
**2**

signed leases for terms of one or more years.  Many tenants also received Section 8 vouchers, such that their leases were subject to and protected by federal law.

4.     Despite the protections guaranteed by their leases, Oklahoma law, and federal housing regulations, these tenants were ruthlessly taken advantage of by Shadow Mountain.   Routine maintenance was deferred, critical utility bills went unpaid, and tenants were forced to live in unsanitary and unsafe conditions for years.

5.     All the while, Shadow Mountain kept collecting rent and holding itself out as a premium apartment complex in Tulsa.  Shadow Mountain was also collecting payments from the Tulsa Housing Authority for federally funded Section 8 vouchers, despite the fact that the apartments did not meet federal guidelines.

6.     Then, in July, 2021, without providing any reason, let alone good cause, Shadow Mountain evicted all of its residents, ignoring the terms of their leases and the governing law.

7.     For several weeks, the management engaged in flagrant abuses of power in an effort to force tenants out.   Management lied to Tenants about their rights, erroneously threatened to involve law enforcement when they had no grounds for doing so, threatened non-profits, elected officials, and other good samaritans with charges of trespassing for having the temerity to help tenants, entered units without permission, and threatened to illegally withhold deposits and other monies owed to the tenants.

8.     The tenants are now desperately seeking temporary and permanent housing despite having a current lease at Shadow Mountain.  Given the lack of notice of the eviction, many were forced to abandon their belongings and put their life on hold, deferring work, medical treatment, school, and other critical needs, to deal with this utterly

-2-

avoidable crisis caused by the willful and wanton behavior of Shadow Mountain.

9.      This artificially created housing crisis has had dire financial effects on the tenants.  Tenants have been forced to apply for new accommodations, pay for the costs of moving and/or storing their possessions, and face a daunting rental market that will end up costing them hundreds more in rent. At the same time, they have been forcibly dislocated from their neighborhood, neighbors, schools, churches, and other important anchors in their lives, all because of the greed and reckless misconduct of Shadow Mountain.

10.     The owners and managers of Vista Shadow Mountain have long profited from the misery of its tenants.  They must be held accountable for their actions.

### THE PARTIES

11.     Defendant CiTYR Group Vista Shadow, LLC is a Delaware limited liability company with its principal place of business located in Tulsa County, Oklahoma.

12.     Defendant P Vista Shadow, LLC is a New York limited liability company with its principal place of business located in Tulsa County, Oklahoma.

13.     Plaintiff Regina Edwards is an individual residing in Tulsa County, Oklahoma.  Regina lived at Shadow Mountain from February 28, 2017 until on or about July 20, 2021.

14.     Plaintiff Sandra Edwards is an individual residing in Tulsa County, Oklahoma.  Sandra lived at Shadow Mountain from February 2019 until on or about July 20, 2021

15.     The conduct giving rise to the claims in this First Amended Petition principally occurred in Tulsa County, Oklahoma.

-3-

16.     Jurisdiction and venue are appropriate in this Court.

### FACTS COMMON TO ALL CLAIMS

17.     Upon information and belief, CiTYR Group Vista Shadow, LLC and P Vista Shadow LLC (collectively referred to herein as "Shadow Mountain") own, operate, and manage the apartment complex commonly known as Vista Shadow Mountain Apartments, located at 7952 E. 60th Place, Tulsa OK 74145 (the "Complex").

18.     Shadow Mountain offered 1, 2, and 3 bedroom apartments for rent at the Complex and accepted Section 8 vouchers.

19.     Shadow Mountain's promotional materials promised "premium design and numerous amenities" and expressed "pride in our remarkable customer service and unique property features."[1]




---

[1] Facebook account: @VistaShadowMountain, facebook.com/VistaShadowMountain.

20.     Shadow Mountain advertised the Complex using photos of spacious, clean, and modern facilities with well-kept grounds and happy tenants.[2]





21.     The impression given by Shadow Mountain's advertising materials were not only false, they were an outright lie.

22.     For example, Plaintiff and class representative Regina Edwards moved into

---

[2] https://www.apartments.com/vista-shadow-mountain-tulsa-ok/hmvkb33/.

the Complex on February 28, 2017, signing a one-year lease.  Regina receives a Section

8 voucher for her living expenses and has high blood pressure, diabetes, and neuropathy

in her legs.

23.    Soon after moving in, sheet rock fell down in her bathroom from water

infiltration.  Her insurance adjustor suspected the presence of mold.  Shadow Mountain

did not follow up on the claim, but merely promised to fix the problem.

24.    Instead of fixing the problem, Shadow Mountain papered over it with

cosmetic fixes, painting over water stains and refusing to address the underlying issues.

25.    In 2018, Regina's apartment flooded when water penetrated the hallway

closet near the air conditioner.  Again, Shadow Mountain assured her the issue was not

serious and did the bare minimum to remediate the damages.

26.    Despite these and other problems with her apartment, Shadow Mountain

never offered Regina a discount on her rent to compensate her for her trouble.  Instead,

each year they had her sign a lease renewal and continued accepting her monthly rent

payments and her Section 8 voucher.

27.    When she tried to renew her lease in 2021, however, Shadow Mountain

demurred.  Soon thereafter, a contractor showed up in her apartment to identify needed

repairs, including a large crack in the ceiling.

28.    Regina was not told about the contractor or what he was doing, nor was she

consulted before more contractors appeared and began ripping holes in her walls and

tearing out her floor and ceiling.  The holes were so big that Regina had to push towels

into them and take other precautions to ward off pests from the outside.

 

29.     After forcing Regina to live in her gutted apartment for two months—all the while continuing to timely receive her rent and refusing to tell her what was going on— Shadow Mountain finally provided her with a new unit to move into during the repairs. This new unit was ostensibly habitable, but within a few weeks of moving in, Regina was told by Shadow Mountain that she had less than 2 weeks to vacate the entire Complex.

30.     Regina was not behind on her rent, nor did Shadow Mountain provide her with any good cause why it could not fulfill its obligations as a landlord, nor was an eviction proceeding pursued in court.

31.     From that day until the present, Regina's life has been upended.  She has had to scramble to find temporary lodging and has been forced to pay for hotel rooms, food, moving costs, and other expenses that she would not have been forced to spend but for Shadow Mountain's conduct.

32.     Similarly, Plaintiff and class representative Sandra Edwards moved into the

Complex in February of 2019.  Each year she renewed the lease in writing, most recently signing a lease that does not expire until February 22, 2022.  Sandra is bi-polar and receives Section 8 voucher for her housing.

33.     From the moment she moved in, Sandra discovered that water would leak down her walls every time it rained.  She constantly asked Shadow Mountain to fix the problem, but they refused.

34.     In June, Sandra was told that she had to move out of her apartment due to the presence of mold.  Shadow Mountain attempted to place her in a much smaller unit, but demanded that she continue paying the same amount in rent.  When Sandra protested, Shadow Mountain told her to leave.

35.     In late June or early July, Shadow Mountain gutted the apartment over her unit, ripping out the sink and dishwasher but failing to cap the pipes.  As a result, water gushed down into her apartment, even entering her lights and electrical sockets, rendering her use of electricity nearly impossible.



36.     At the time, Sandra was taking care of her grandchildren, and was forced to spend extra money and resources because she could not use the electricity in her apartment.

37.     Now, Sandra has been turned out of Shadow Mountain without a proper eviction notice or court hearing.  She has been forced to spend her life's savings on temporary housing, food, gasoline, and other living expenses, and is worried about being able to find a new home close to her family.

38.     Sadly, these stories are common, with news accounts rife with tales of Shadow Mountain's tenants being forced to live in units without walls and even having to put down their pets because of exposure to toxic mold.[3]

39.     Despite the numerous, documented problems with the facility identified by Regina, Sandra, and many other tenants, Shadow Mountain never took any steps to remediate the problems.

40.     As late as March 2021, Shadow Mountain was promising tenants that "improvements are very near!"

---

[3] https://tulsaworld.com/news/local/govt-and-politics/imminently-dangerous-fire-marshal-calls-conditions-at-vistashadow-mountain-apartments-appalling/article_Sb709dae-e402-11 eb-ac00-Sb 1563f13cff.html.



41.     In fact, the Complex was so run down, when the Tulsa Fire Department was asked to inspect it, criminal citations were issued for unsafe conditions and numerous violations of the city's fire and building maintenance codes.[4]

42.     Issues included, among many others: black mold, missing exterior and interior walls, leaky roofs, and faulty electrical and plumbing systems.




---

[4] Id.

43.     In addition to its failure to maintain the property in a fit and habitable condition, Shadow Mountain failed to pay its utility bills even though tenants were paying their rent.

44.     In May, the City of Tulsa notified Shadow Mountain and its tenants that more than $100,000 was due for its water bills.  The City threatened to cut off water for the Complex if the bill was not paid.

45.     As these problems mounted, rather than remediate the property and pay its bills, Shadow Mountain decided to try and evict all of its tenants, including Plaintiffs, with less than 30 days' notice and, in some cases, with no notice at all.[5]

46.     Most of these tenants had valid leases with unexpired terms.  In fact, some leases were signed only a few months before the eviction notice.

47.     As the tenants struggled to understand their rights and obtain new accommodations, Shadow Mountain unleashed a torrent of misinformation, aggressively hounding its tenants out of the Complex.

48.     For example, while collecting July rent for the Complex, Shadow Mountain pressured tenants to sign a release of their rights, including the right to sue, in exchange for a reduction in rent.  Of course, such a release violates Oklahoma law and, in any event, lacks any consideration given the fact that Shadow Mountain should not have been charging rent for uninhabitable units.

49.     As time wore on, Shadow Mountain's tactics became more aggressive. They threatened to change locks, impound property, and have lawful tenants escorted off

---

[5] https://www.news9.com/story/60bee184f574ef0c0e81b8e9/abrupt-notice-to-move-out-sparks-anger-confusion-for-tulsa-apartment-residents-.

the property by law enforcement.  They also threatened community members and civic

leaders who were trying to help tenants relocate.

50.    Now, the tenants have been scattered across Tulsa in hotels or other

temporary accommodations, facing the prospect of spending money that most of them

don't have on lodging, food, and other necessities.  Some tenants have been forced to

abandon their personal property at the Complex, while others have even lost their jobs

because of the time they were forced to spend dealing with this crisis.

## CLASS ALLEGATIONS

51.    Plaintiffs bring this action on behalf of themselves and all others similarly

situated pursuant to 12 O.S. § 2023. This action satisfies the numerosity, commonality,

typicality, adequacy, predominance and superiority requirements of § 2023. The

proposed Class is defined as:

> All current and former tenants of Vista Shadow Mountain Apartments who
> were summarily evicted between May and July, 2021.

52.    Plaintiffs brings this action on their own behalf and on behalf of all others

similarly situated pursuant to 12 O.S. § 2023. Excluded from the Class are CiTYR Group

Vista Shadow, LLC, P Vista Shadow, LLC, their parents, subsidiaries and affiliates,

officers, directors and members, the legal representatives, heirs, successors or assigns

of any such excluded party, the judicial officer(s) to whom this action is assigned, and the

members of their immediate families.

53.    Plaintiffs reserve the right to modify or amend the definition of the proposed

Class if necessary before this Court determines whether certification is appropriate.

54.    This case is properly brought as a class action under 12 O.S. § 2023(A) and

(B)(3), and all requirements therein are met for the reasons set forth in the following

paragraphs.

55.     *Numerosity under 12 OS. § 2023(A)(I)*. The members of the Class are so numerous that separate joinder of each member is impracticable. Upon information and belief, and subject to class discovery, the Class consists of hundreds of individuals, the identity of whom are largely within the knowledge of, and can be ascertained by resort to, Shadow Mountain's records.

56.     *Commonality under 12 OS. § 2023(A)(2))*. There are numerous questions of law and fact common to the Class relating to the conduct of Shadow Mountain challenged herein, and those common questions predominate over any questions affecting only individual Class members. The common questions include, but are not limited to:

> a) Whether Shadow Mountain breached the terms of its uniform lease agreement with its tenants;
>
> b) Whether Shadow Mountain breached the Oklahoma Landlord and Tenant Act by failing to maintain the Complex in a manner fit for habitation;
>
> c) Whether Shadow Mountain breached federal housing law by taking Section 8 vouchers for a structure that was not fit for habitation;
>
> d) Whether Shadow Mountain breached federal housing law by evicting Section 8 voucher holders without notice and/or without a court hearing;
>
> e) Whether Shadow Mountain's conduct violated the Oklahoma Landlord and Tenant Act by evicting tenants without sufficient notice;
>
> d) Whether Shadow Mountain breached the leases or the governing law when it refused to return deposits, prorate rent, or return personal property;
>
> e) Whether Shadow Mountain's summary evictions and failure to maintain the premises were outrageous, wanton, and willful;
>
> f) Whether Shadow Mountain's conduct violated the Oklahoma Consumer Protection Act; and

g) Whether Plaintiff and other members of the Class have sustained damages and the proper measure of damages.

57.     *Typicality under 12* O.S. *§ 2023(A)(3).* Plaintiffs claims are typical of the claims of the other Class members in that they arise out of the same wrongful conduct by Shadow Mountain, as described herein.

58.     *Adequacy of Representation under 12* O.S. *§ 2023(A)(4).* Plaintiffs are an adequate representative of the Class in that they were residents of the Complex who suffered damages as a result of Shadow Mountain's breaches of contract and law.  In addition:

a) Plaintiffs are committed to the vigorous prosecution of this action on behalf of themselves and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions;

b) There is no hostility of interest between Plaintiffs and the unnamed Class members;

c) Plaintiffs anticipate no difficulty in the management of this litigation as a class action; and

d) Plaintiffs legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

59.     *Predominance under 12* O.S. *§ 2023(B)(3).* The questions of law and fact common to the Class as set forth in the "commonality" allegation above predominate over any individual issues. As such, the "commonality" allegations are restated and incorporated herein by reference.

60.     *Superiority under 12* O.S. *§ 2023(B)(3).* A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy.

61.     Since the amount of each individual Class member's claim may be small

-14-

relative to the complexity of the litigation, no Class member could reasonably afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Shadow Mountain's misconduct will proceed without remedy. In addition, even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court herein.

62.     All conditions precedent to bringing this action have been satisfied and/or waived.

## Count I: Breach of Contract

63.     Plaintiffs restate and incorporate herein by reference the allegations contained in Paragraphs 1 through 62 above.

64.     The leases are binding contracts between Plaintiffs and Class Members, on the one hand, and Shadow Mountain, on the other hand.

65.     Shadow Mountain's aforementioned conduct violates the express terms of the leases.

66.     Plaintiffs and members of the Class have been, and will continue to be, damaged by Defendants CiTYR Group Vista Shadow, LLC and P Vista Shadow, LLC

breaches of contract in an amount to be proven at trial, but in no event less than $75,000.

## Count II: Breach of the Duty of Good Faith and Fair Dealing

67.     Plaintiffs restate and incorporate herein by reference the allegations contained in Paragraphs 1 through 66 above.

68.     The leases at issue in this case are subject to the implied covenant of good faith and fair dealing.

69.     Moreover, as a landlord, Shadow Mountain must perform its duties to tenants in good faith pursuant to 41 O.S. §107.

70.     Under these covenants of good faith and fair dealing, neither party may do anything which will injure the right of the other party to receive the benefits of the leases or the governing law.

71.     Shadow Mountain was required to act in subjective good faith, meaning that it could not act to deprive the Plaintiffs or the Class of the explicit benefits of the leases or Oklahoma law, and in objective good faith, which consists of acting in a manner that a reasonable person would regard as fair.

72.     Shadow Mountain's actions were conducted in a manner that a reasonable person would regard as unfair.

73.     Shadow Mountain's actions violated their contractual and legal covenants of good faith and fair dealing.

74.     Plaintiffs and members of the Class have been, and will continue to be, damaged by Defendants CiTYR Group Vista Shadow, LLC and P Vista Shadow, LLC breaches of their covenants of good faith and fair dealing in an amount to be proven at trial, but in no event less than $75,000.

-16-

## COUNT III: Restitution, Quasi-Contract and/or Unjust Enrichment

75.     Plaintiffs restate, reallege, and incorporate herein by reference all of the allegations contained in Paragraphs 1-75.

76.     Shadow Mountain has received multiple benefits from Plaintiffs and Class Members, including the payment of deposits and rent owed under the leases while Shadow Mountain failed to uphold its obligations and duties, including the obligation to provide safe, habitable apartments.

77.     It would be inequitable for Shadow Mountain to retain these benefits.

78.     Plaintiffs and members of the Class have been, and will continue to be, damaged by Defendants CiTYR Group Vista Shadow, LLC and P Vista Shadow, LLC in an amount to be proven at trial, but in no event less than $75,000.

## COUNT IV: Violation of the Oklahoma Landlord and Tenant Act

79.     Plaintiffs restate and incorporate herein by reference the allegations contained in Paragraphs 1 through 78 above.

80.     Shadow Mountain has violated various provisions of the Oklahoma Landlord and Tenant Act, including, but not limited to, it's duty to provide proper notice of lease termination under 41 O.S. § 111, it's duty to return deposits under 41 O.S. § 115, and its duty to maintain safe and habitable facilities under 41 O.S. § 118.

81.     Shadow Mountain wrongfully removed and excluded Plaintiffs and Class Members from the Complex or otherwise terminated their leases under 41 O.S. § 123, allowing Plaintiffs and Class Members to recover twice their actual damages.

82.     Further, Plaintiffs and Class Member are entitled to collect their attorney's fees and costs under 41 O.S. § 105 for Shadow Mountain's breaches.

83.     Plaintiffs and members of the Class have been, and will continue to be, damaged by Defendants CiTYR Group Vista Shadow, LLC and P Vista Shadow, LLC violations of the Oklahoma Landlord and Tenant Act in an amount to be proven at trial, but in no event less than $75,000, in addition to double damages and an award of attorney's fees.

### COUNT V: Violation of the Oklahoma Consumer Protection Act

84.     Plaintiffs restate and incorporate herein by reference the allegations contained in Paragraphs 1 through 83 above.

85.     Shadow Mountain's conduct, as described herein, constitutes a deceptive trade practice as defined in the Oklahoma Consumer Protection Act, 15 O.S. §§ 752(13), 753(20).

86.     Shadow Mountain's unlawful conduct occurred, and continues to occur, in the conduct of trade or commerce and in the course of its business.

87.     Plaintiffs and members of the Class have been, and will continue to be, damaged by Defendants CiTYR Group Vista Shadow, LLC and P Vista Shadow, LLC breaches of their violations of the Oklahoma Consumer Protection Act in an amount to be proven at trial, but in no event less than $75,000, including attorneys' fees and costs under 15 O.S. § 761.1.

### COUNT VI: Statutory and Common Law Nuisance

88.     Plaintiffs restate and incorporate herein by reference the allegations contained in Paragraphs 1 through 87 above.

89.     By failing to perform its duty to provide fit and habitable facilities, Shadow Mountain has annoyed, injured, and endangered the comfort and safety of Plaintiffs and

the Class.

90.     Said conduct and the physical structure of the Complex constitute a public nuisance, since it affects at the same time all of the tenants at the Complex as well as the surrounding neighborhoods and communities.

91.     Said conduct and the physical structure of the Complex also constitute a private nuisance for Plaintiffs and Class Members.

92.     Plaintiffs and Class Members have been, and will continue to be, damaged by Defendants CiTYR Group Vista Shadow, LLC and P Vista Shadow, LLC maintenance of a nuisance in an amount to be proven at trial, but in no event less than $75,000, in addition to punitive damages.

## COUNT VII: Negligence and Gross Negligence

93.     Plaintiffs restate and incorporate herein by reference the allegations contained in Paragraphs 1 through 92 above.

94.     Shadow Mountain failed to exercise ordinary care in maintaining and managing the Complex.

95.     Shadow Mountain's conduct was carried out in reckless disregard of the consequences such that a reasonable person would know, or have reason to know, that such conduct would be likely to result in substantial harm to another.

96.     Plaintiffs and members of the Class have been, and will continue to be, damaged by the negligent and grossly negligent conduct of Defendants CiTYR Group Vista Shadow, LLC and P Vista Shadow, LLC in an amount to be proven at trial, but in no event less than $75,000, in addition to punitive damages.

## COUNT VII: CONVERSION

97.     Plaintiffs restate and incorporate herein by reference the allegations contained in Paragraphs 1 through 96 above.

98.     Plaintiffs and Class members were lawfully residing at the Complex with their property and possessions.

99.     Due to Shadow Mountain's conduct, many were forced to abandon property at the complex and have not been allowed to retrieve it.  In addition, Shadow Mountain has wrongfully refused to return deposits, prorate rent, or return other monies due and owing to Plaintiffs and Class Members.

100.    Thus, Shadow Mountain intentionally took possession of Plaintiffs' and Class Members' property without permission or the authority to do so.

101.    Plaintiffs and members of the Class have been, and will continue to be, damaged by Defendants CiTYR Group Vista Shadow, LLC and P Vista Shadow, LLC conversion of personal property in an amount to be proven at trial, but in no event less than $75,000, in addition to punitive damages.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for judgment in their favor and against Defendants CiTYR Group Vista Shadow, LLC and P Vista Shadow, LLC for:

(i) An order certifying that this action may be maintained as a class action, that Plaintiffs be appointed Class Representatives, and that Plaintiffs' counsel be appointed Class Counsel;

(ii) Compensatory damages in an amount to be proven at trial, but in no event less than $75,000;

-20-

(iii) For punitive damages in an amount to be proven at trial;

(iv) for all appropriate penalties, interest, court costs and attorney's fees owed under applicable law; and

(v) for all further general and equitable relief to which Plaintiffs and the Class may be entitled.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury on all issues in this Class Action Petition that are so triable as a matter of right.

Respectfully submitted,

Frederic Dorwart, OBA # 2436
Jared M. Burden, OBA # 30026
FREDERIC DORWART, LAWYERS PLLC
Old City Hall
124 East Fourth Street
Tulsa, Oklahoma 74103
(918) 583-9922 – Telephone
(918) 583-8251 – Facsimile
Email: fdorwart@fdlaw.com
       jburden@fdlaw.com